Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 20, 2003      Decided January 13, 2004

No. 02-1306

B&J OIL AND GAS,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

DOMINION TRANSMISSION, INC.,
INTERVENOR

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Edward W. Hengerer* argued the cause and filed the briefs for petitioner.

*Laura J. Vallance*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

*H. Christopher Bartolomucci* argued the cause for intervenor. On the brief were *Kevin J. Lipson* and *Christopher A. Schindler*.

Before: GINSBURG, *Chief Judge*, and ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: In this case, we consider an energy producer's challenge to the Federal Energy Regulatory Commission's decision to permit a neighboring natural gas pipeline operator to expand an underground gas storage facility onto the producer's property. Although we reject FERC's argument that the producer lacks standing to pursue this challenge, because FERC's orders are supported by substantial evidence and are neither arbitrary nor capricious, we deny the petition for review.

## I.

Under section 7(c) of the Natural Gas Act (NGA), natural gas companies seeking to construct new gas transportation or storage facilities, or to expand existing ones, must obtain a certificate of "public convenience and necessity" from the Federal Energy Regulatory Commission. *See* 15 U.S.C. § 717f(c)(1)(A) (2000) ("No natural-gas company . . . shall engage in the transportation or sale of natural gas . . ., or undertake the construction or extension of any facilities therefor . . ., unless there is in force . . . a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations . . . ."); *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 295 n.1 (1988) (stating that "transportation" within the meaning of the NGA includes storage). Such certificates enable gas companies unable to purchase the property rights needed to construct or operate their certificated facilities to acquire the property from unwilling owners through eminent domain. 15 U.S.C. § 717f(h).

Dominion Transmission, Inc., intervenor in this case, owns and operates an interstate gas transmission system that transports and stores natural gas for customers in several east coast states. As part of this system, Dominion runs an underground storage facility in central West Virginia called the Fink–Kennedy/Lost Creek Storage Reservoir. FERC's predecessor, the Federal Power Commission, certificated the Fink Reservoir in 1956. *See Dominion Transmission, Inc.*, 97 F.E.R.C. ¶ 61,344, 62,598 (2001) (relying on *Hope Natural Gas Co.*, 16 F.P.C. ¶ 955 (1956)). The Fink Reservoir spans nearly 50,000 acres within the Gantz Formation, a geologic formation located approximately 1600 to 2600 feet underground. According to Dominion, the Fink Reservoir is one of the country's largest natural gas storage facilities.

Petitioner B&J Oil and Gas operates fourteen oil and gas wells, ten of which are located within the Gantz Formation adjacent to the current boundary of Dominion's Fink storage field. In these proceedings, B&J acts "on behalf of the working interest owners and royalty interest owners that it represents as the operator of [these] fourteen wells." Pet'r's Br. at 2.

In February 2001, Dominion asked FERC to revise the Fink Reservoir's certificated boundary. In its application filed pursuant to NGA section 7(c), Dominion asserted that data acquired and analyses performed after the field's initial certification indicated that gas could easily migrate out of the reservoir area and that third-party wells located outside the current boundary likely were "producing," i.e., extracting, gas from Dominion's storage field. To prevent this loss, Dominion asked FERC to amend the Fink Reservoir's certificated boundary to encompass an additional 3063 acres, which would enlarge the storage area to the reservoir's actual geologic border. This proposed expansion would incorporate neighboring private property, including B&J's.

To protect its property interests, B&J intervened and objected to Dominion's application. Claiming that Dominion had failed to present sufficient engineering and geologic information to justify boundary expansion, B&J submitted its

own expert report challenging the accuracy of some of Dominion's data. Staff from FERC's Office of Energy Projects subsequently sent "deficiency letters" to both Dominion and B&J requesting more information about their filings. In response, Dominion submitted additional materials, requesting confidential treatment for five documents on the ground that they contained sensitive or proprietary information. B&J promptly filed a Freedom of Information Act request to obtain one of the five assertedly privileged documents, explaining that the other four appeared on a publicly accessible FERC information management system. After determining that it had mistakenly posted Dominion's confidential documents, FERC removed the materials from its information system, ordered parties who had downloaded them to destroy the documents and not to use them in any way, and denied B&J's FOIA application. *See Dominion Transmission, Inc.*, 96 F.E.R.C. ¶ 61,238, 61,955 (2001) (document destruction order); *Dominion Transmission, Inc.*, 97 F.E.R.C. ¶ 61,120, 61,584 (2001) (denying rehearing of the document destruction order and noting that the Commission's Office of External Affairs had denied B&J's FOIA request). Concluding that the public record contained sufficient information for it to decide Dominion's boundary revision application, FERC also rejected B&J's request to stay the Dominion certificate proceedings until after the agency resolved B&J's FOIA appeal, *see Dominion*, 97 F.E.R.C. at 61,584, and later affirmed the denial of B&J's FOIA application, *see Dominion Transmission, Inc.*, 100 F.E.R.C. ¶ 61,168, 61,601 n.3 (2002).

In December 2001, FERC approved Dominion's application to expand the Fink Reservoir. *Dominion*, 97 F.E.R.C. at 62,598. Relying only on publicly available information, FERC found that the Gantz Formation was larger than the Fink Reservoir's currently certificated boundary and that Dominion storage gas was in fact migrating toward B&J's wells. *Id.* at 62,601. FERC thus found it "in the public convenience and necessity to expand the storage boundary for the Fink Reservoir as proposed, in order to maintain the operational integrity of the storage field and to enable Dominion to continue to provide reliable natural gas storage ser-

vice." *Id.* Balancing the need to ensure the storage field's integrity against B&J's interests, FERC concluded that preventing gas migration outweighed B&J's property interests because B&J would be compensated for the loss of its oil and gas wells through eminent domain proceedings. *Id.* In addition, the Commission rejected B&J's proposal to allow the company to continue producing oil and return any Dominion storage gas that it extracted. According to the Commission, permitting third-party drilling in the area could interfere with storage operations and encourage other producers to poach Dominion gas. *Id.* at 62,601–02. In a second order, FERC denied B&J's petition for rehearing. *Dominion*, 100 F.E.R.C. at 61,603.

B&J now petitions for review, challenging both FERC orders. It claims that FERC acted arbitrarily and capriciously in granting Dominion's application and that the Commission's decision is unsupported by substantial evidence.

## II.

Before considering the merits of B&J's petition, we must address FERC's argument—supported by Dominion—that B&J lacks standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–102 (1998) (holding that federal courts must ensure that they have jurisdiction before considering the merits of a case). To establish Article III standing, B&J must demonstrate that it has suffered an injury-in-fact, that FERC's action caused its injury, and that a favorable order would likely redress its harm. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Idaho Power Co. v. FERC*, 312 F.3d 454, 459–60 (D.C. Cir. 2002).

FERC and Dominion insist that B&J is not "aggrieved" within the meaning of the Natural Gas Act because subsequent eminent domain proceedings will fully remedy any harm that FERC's orders may cause B&J. *See* 15 U.S.C. § 717r(b) (2000) (providing that only "aggrieved" parties may seek judicial review of FERC decisions). Absent such "aggrievement," they claim, B&J has suffered no injury and therefore cannot establish constitutional standing to petition

this court for review. Acknowledging that it found no legal authority supporting its theory, Dominion contends that its standing claim presents a "novel" issue of "first impression." *See* Mot. of Intervenor Dominion Transmission, Inc. for Leave To Share Oral Argument Time with Resp't at 3.

We think the standing argument is not so much "novel" as it is wholly without merit. Because FERC's approval of Dominion's application will eliminate B&J's ownership interest in its property, B&J unquestionably suffers from an injury-in-fact. As a result of the Commission's orders, B&J, whether or not it wishes to continue operating its oil and gas wells, must either sell its land to Dominion or allow Dominion to take its property through eminent domain. *See Idaho Power*, 312 F.3d at 460 (finding an injury-in-fact where a FERC order would compel a company to enter into a short-term, instead of a long-term, contract even though the two contracts had equivalent monetary value). That Dominion ultimately will compensate B&J for its property does nothing to erase B&J's legally cognizable injury. *See Consumer Fed'n of Am. v. FCC*, 348 F.3d 1009, 1012 (D.C. Cir. 2003) ("[T]he inability of consumers to buy a desired product may constitute injury-in-fact even if they could ameliorate the injury by purchasing some alternative product." (internal quotation marks omitted)). Indeed, if FERC's and Dominion's theory were correct, homeowners would be unable to challenge construction of a road through their homes, no matter how arbitrary or unjust the decision. The public entity building the road would simply argue, as here, that the homeowners lack Article III standing because eminent domain proceedings will fully compensate them for the value of their homes. No wonder neither FERC nor Dominion cites any supporting authority.

B&J easily satisfies the other requirements for Article III standing: FERC's orders cause B&J's injury because they effectively extinguish B&J's ownership interests, and a favorable decision here would redress B&J's harm, for absent FERC's approval, Dominion would have no right to take over B&J's property. We thus turn to the merits.

### III.

We evaluate FERC's orders under familiar and highly deferential standards of review. We will sustain the Commission's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000); *see also Midcoast Interstate Transmission, Inc. v. FERC*, 198 F.3d 960, 967 (D.C. Cir. 2000) (applying the arbitrary and capricious standard of review to a challenge to a FERC order). If supported by substantial evidence, the Commission's findings of fact are conclusive. 15 U.S.C. § 717r(b). Moreover, when agency orders involve complex scientific or technical questions, as here, we are particularly reluctant to interfere with the agency's reasoned judgments. *See City of Waukesha v. EPA*, 320 F.3d 228, 247 (D.C. Cir. 2003) (per curiam) ("[W]e will give an extreme degree of deference to the agency when it is evaluating scientific data within its technical expertise." (internal quotation marks omitted)).

B&J first argues that FERC acted arbitrarily and capriciously by failing to recognize the "*sui generis* nature" of the Fink Reservoir, Pet'r's Br. at 13—namely, that Dominion's facility stores natural gas in a non-depleted oil field (a field that still contains producible oil) rather than in the more typical, depleted natural gas field (a field emptied of producible natural gas). In missing this distinction and in mechanically applying FERC precedent relating to storage reservoirs in depleted gas fields, B&J argues, FERC improperly disregarded two key issues: (1) the adverse impact that boundary revision would have on domestic oil production, and (2) the unique difficulties associated with storing gas in an active oil field. As B&J sees it, FERC erred in ignoring these factors because the public convenience and necessity standard "that forms the basis of FERC's responsibility under the NGA is not completely static . . . and is meant by Congress to be broad and flexible enough to address current conditions that differ significantly from the original certificate context." Pet'r's Br. at 17 (citation omitted). We are unconvinced.

To begin with, we do not agree that FERC applied an erroneous public convenience and necessity standard. In deciding to grant Dominion's application, FERC followed established precedent. Specifically, when the Commission evaluates an application to enlarge a storage field boundary, it considers whether expansion is necessary to preserve the integrity of the storage field, and its "material consideration is whether the storage reservoir has expanded and whether the company's estimations of the reservoir and protective boundaries are reasonable." *Dominion*, 97 F.E.R.C. at 62,-600; *see also Nat'l Fuel Gas Supply Corp.*, 88 F.E.R.C. ¶ 61,129, 61,134–44 (1999); *ANR Pipeline Co.*, 76 F.E.R.C. ¶ 61,263, 62,346 (1996), *reh'g denied*, 78 F.E.R.C. ¶ 61,122 (1997). B&J cites no authority to support its claim that FERC could not apply this precedent here simply because Dominion's storage reservoir is housed in an active oil field and not a depleted gas field. Moreover, B&J's argument that FERC's public convenience and necessity analysis should have incorporated a broader range of factors based on this court's precedent fundamentally misapprehends the two cases on which the company relies, *Koch Industries, Inc. v. Federal Power Commission*, 554 F.2d 1158 (D.C. Cir. 1977), and *Consolidated Gas Supply Corp. v. Federal Power Commission*, 520 F.2d 1176 (D.C. Cir. 1975). In those cases, we observed—unremarkably—that agencies may change their policies as long as they engage in reasoned decisionmaking and explain their breaks with precedent. The Commission is not "impotent," we explained in *Koch Industries*, "to appropriately reshape policies in its continuing endeavor to solve the Nation's critical gas shortage." 554 F.2d at 1162. Nor does "[t]he legal system . . . compel rigidity, or bureaucratic inflexibility, least of all in an area like energy policy where flexibility may be essential in the public interest." *Consol. Gas*, 520 F.2d at 1185. Thus, although these cases certainly *authorize* FERC to shift course in response to evolving circumstances, they do not permit us to *compel* FERC to consider the factors that *we* believe are in the public interest as B&J would have us do. Indeed, such a result would be

flatly inconsistent with fundamental principles of judicial deference to agency expertise.

Furthermore, despite B&J's claims to the contrary, FERC did consider the effect of Dominion's application on domestic oil production—it simply rejected B&J's position that oil supply in the area justified rejecting Dominion's application. In its rehearing order, the Commission concluded that B&J's projections of crude oil recovery were "overstated" and that B&J currently produces only fifty barrels of oil per day from its Gantz Formation wells. *Dominion*, 100 F.E.R.C. at 61,-602. In light of the limited oil deposits at issue, we find nothing unreasonable about FERC's conclusion that "the benefits of maintaining the operational integrity of the storage field so that Dominion could continue to provide reliable natural gas storage service outweighed any adverse [e]ffect to B&J's interests." *Id.* B&J's argument that FERC should not only have reevaluated the technical premises underlying the original decision to certificate the Fink Reservoir for gas storage but also considered requiring Dominion to resume its own oil production in the Fink Reservoir makes little sense in the context of this proceeding. Dominion's application only sought permission to expand an existing gas storage pool—not permission to convert the field from oil production into gas storage as an original matter.

B&J's contention that the Commission failed to consider the difficulties associated with storing natural gas in an active oil field likewise provides no basis for setting aside FERC's approval of Dominion's application. According to B&J, housing natural gas in an oil field is problematic because the oil mixes with and thus taints the storage gas. Even if this is so, B&J offers no evidence to show that extending the Fink Reservoir's certificated boundary, the only question at issue here, will result in greater gas loss or cost to Dominion's customers than if the boundary were left unchanged.

Finally, we reject B&J's claim that FERC's orders are unsupported by substantial evidence. Although the substantial evidence standard "requires more than a scintilla," it "can be satisfied by something less than a preponderance of the

evidence." *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002). Here, FERC based its findings on: (1) isopach maps demonstrating that the Gantz Formation extends beyond the currently certificated area, (2) a structural map of the Gantz Formation, (3) isobaric maps demonstrating that pressure variations would tend to cause Dominion's storage gas to migrate, and (4) the production history of B&J's wells showing Dominion storage gas likely entering B&J's energy production area. *Dominion*, 97 F.E.R.C. at 62,601. This data-rich evidentiary record easily satisfies our "more than a scintilla, less than a preponderance" standard. Moreover, FERC's decision rests on just the type of highly technical evidence that this court is least equipped to second-guess. *See City of Waukesha*, 320 F.3d at 247.

B&J nevertheless contends that FERC's orders lack substantial evidence because the Commission failed to consider the confidential documents that Dominion submitted in response to agency "deficiency letters," which, according to B&J, prove that FERC itself viewed the public record as insufficient. As B&J sees it, because the ignored documents might contain information supporting its position, FERC should have granted B&J access to them and considered them before approving Dominion's application.

B&J's arguments do not justify remand to the agency. For one thing, just because agency *staff* sought additional information in no way undermines *FERC*'s ultimate determination that the public record was adequate to decide the case. Indeed, the public record, which comprises not only Dominion's and B&J's pleadings but also Dominion's non-confidential responses to staff data requests, contains ample evidence on the key issues relevant to FERC's inquiry—whether the Gantz Formation is larger than the currently certificated area, whether gas is migrating, and whether Dominion's estimates of the actual border are reasonable. FERC, moreover, gave B&J an opportunity to refute Dominion's data and to challenge FERC's findings with B&J's own geologic or engineering reports. *See Dominion*, 97 F.E.R.C. at 62,599 (stating that the Commission had permitted B&J to reply to Dominion's answer to B&J's protest). Having failed

to do so, B&J leaves us with no basis for concluding that FERC's decision is unsupported by substantial evidence. Finally, in light of this extensive public record, not only is B&J's argument that it needed access to Dominion's confidential documents that "might" support its position far too speculative to provide a basis for setting aside FERC's judgment, but also, in substantial evidence cases, "[t]he question we must answer ... is not whether record evidence supports [the petitioner's] version of events, but whether it supports FERC's." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 368 (D.C. Cir.), *cert. denied*, 124 S. Ct. 386 (2003).

Having found FERC's decision supported by substantial evidence and neither arbitrary nor capricious, we deny the petition for review.

*So ordered.*