# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 22, 2005        Filed March 15, 2005

No. 04-1037

AMERICAN LIBRARY ASSOCIATION, ET AL.,
PETITIONERS

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

MOTION PICTURE ASSOCIATION OF AMERICA, INC., ET AL.
INTERVENORS

---

On Petition for Review of an Order of the
Federal Communications Commission

---

*Pantelis Michalopoulos* argued the cause for petitioners. With him on the briefs were *Cynthia L. Quarterman*, *Rhonda M. Bolton*, *Lincoln L. Davies*, and *Gigi B. Sohn*.

*Jacob M. Lewis*, Attorney, Federal Communications Commission, argued the cause for respondents. With him on the brief were *R. Hewitt Pate*, Assistant Attorney General, *Catherine G. O'Sullivan* and *James J. Fredricks*, Attorneys, *John A. Rogovin*, General Counsel, Federal Communications Commission, *Austin C. Schlick*, Deputy General Counsel, *Daniel M. Armstrong*, Associate General Counsel, and *C. Grey Pash, Jr.*, Counsel.

*Christopher Wolf*, *Bruce E. Boyden*, *Mace J. Rosenstein*, and *Catherine E. Stetson* were on the brief for intervenor Motion Picture Association of America, Inc.

Before: EDWARDS, SENTELLE, and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

Dissenting opinion filed by *Circuit Judge* SENTELLE.

EDWARDS, *Circuit Judge*:  This case involves a challenge by petitioners American Library Association, *et al.* to a rule adopted by the Federal Communications Commission ("FCC" or "Commission") requiring digital television receivers and related electronic equipment manufactured on or after July 1, 2005 to give effect to the "broadcast flag," a code that broadcasters can insert into digital television content, which signals reception equipment to limit the redistribution of that content.  *See In the Matter of Digital Broadcast Content Protection, Report and Order and Further Notice of Proposed Rulemaking*, 18 F.C.C.R. 23,550 (2003).  Although petitioners have an obvious interest in the rule, and they plausibly contend that they will be adversely affected by its implementation, a question has arisen about their standing to pursue this petition for review.

The present petition for review poses an unusual situation with respect to the court's consideration of standing.  In *Sierra Club v. EPA*,  292 F.3d 895, 900 (D.C. Cir. 2002), we indicated that "a petitioner whose standing is not self[-]evident should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in the review proceeding."  This case presents a situation not explicitly contemplated by *Sierra Club*.  Both petitioners and the Commission reasonably, if inaccurately, concluded that petitioners' standing was self-evident, so neither party pursued the matter in their opening briefs to the court.  An intervenor, Motion Picture Association of America, Inc.

("MPAA"), supporting the Commission, interposed a vague and limited challenge to petitioners' standing, which prompted an equally vague and limited response from petitioners in their reply brief, no response from the Commission, and no request for additional information from the court before oral argument. After hearing arguments, which did not resolve the issue, and reviewing the administrative record, which is not fully illuminating on the matter of standing, we have concluded that more is required in order for the court to determine conclusively whether petitioners have Article III standing.

\* \* \* \*

In their initial submissions to the court, both petitioners and the Commission apparently assumed that petitioners' standing was "self-evident" under *Sierra Club*. Petitioners included a jurisdictional statement in their opening brief in which they generally asserted a basis for Article III standing. *See* Petitioners' Br. at 1 (stating that "[e]ach of the petitioners . . . has members whose right to make use of copyrighted information will be adversely affected, and who will very likely have to pay higher prices for certain consumer electronics equipment, as a result of the Commission's *Order*."). This statement was not contested by the Commission. After petitioners filed their opening brief, MPAA suggested in a single paragraph of its brief that petitioners had failed to comply with *Sierra Club*. It was unclear, however, whether MPAA merely meant to suggest that, because in its view standing was not self-evident, petitioners had failed to satisfy the "pleading requirements" of *Sierra Club* or, additionally, meant to contend that petitioners lacked Article III standing. *See* MPAA Br. at 1. Petitioners responded to MPAA's argument in their reply brief, asserting in general and conclusory terms that they did have standing and providing some citations to case law and the administrative record. *See* Petitioners' Reply Br. at 6 n.1. The FCC did not weigh in on the issue, apparently viewing

petitioners' standing as self-evident. And the court did not seek additional information from the parties before oral argument.

During the course of oral argument, counsel for the FCC confirmed that the Commission was not challenging petitioners' standing in this case. Recording of Oral Argument at 29:01-:17. When members of the court questioned petitioners' counsel regarding standing, petitioners cited portions of the administrative record in support of their standing. After oral argument, petitioners provided additional citations in a letter to the court. *See* Petitioners' Letter Providing Citations of 2/23/05. These citations give some indications that petitioners' members will suffer concrete and particularized injuries from the Commission's disputed broadcast flag rule. *See, e.g.,* Joint Comments of American Library Association, *et al.*, 12/6/02, *reprinted in* Joint Appendix ("J.A.") 654, 669-70 (comments submitted by five petitioners to the FCC before the adoption of the order in dispute, asserting that a broadcast flag regime would impair libraries' capacity to make legitimate use of digital content to promote research by making copies of television broadcasts available to distant locations and would hinder educators' capacity to make legitimate use of digital content to facilitate distance learning). But the information to which petitioners pointed was not compiled to address standing and thus does not fully illuminate the issue. Apparently understanding this, petitioners suggested that an expedited briefing order would be warranted if the court determined that further argument regarding standing would be useful. *See* Petitioners' Letter Providing Citations of 2/23/05.

On the record before us, we conclude that petitioners reasonably believed their standing is self-evident. Our conclusion is based on several considerations. First, the petitioners represent a large number of libraries and consumers who indisputably will be directly affected by the broadcast flag rule. Therefore, petitioners had good reason to assume that at

least one of their members would suffer an Article III injury with the implementation of the disputed rule.  Moreover, the Commission conceded that the flag rule would result in increased costs to consumers.  Second, nothing in the record alerted petitioners to the possibility that their standing would be challenged in this court.  Third, the administrative record provides examples of legitimate uses of information technologies made by libraries that could be adversely affected by the flag rule.

In short, petitioners – like the Commission – reasonably assumed that their standing was self-evident and, as a result, did not support their standing with anything more than a general jurisdictional statement in their opening brief and citations to portions of the administrative record.  Although we now require more from petitioners, we find that they did not defy any commands of *Sierra Club* in their initial submissions to the court.

* * * *

It is well established that a federal court cannot act in the absence of jurisdiction, *see B&J Oil & Gas v. FERC*, 353 F.3d 71, 74-75 (D.C. Cir. 2004), and that jurisdictional issues may be raised by the court *sua sponte*, *see, e.g., Lee's Summit, Mo. v. Surface Transp. Bd.*, 231 F.3d 39, 41 (D.C. Cir. 2000).  It is equally well established that Article III standing is a prerequisite to federal court jurisdiction, s*ee, e.g., Crow Creek Sioux Tribe v. Brownlee,* 331 F.3d 912, 915-16 (D.C. Cir. 2003), and that petitioners carry the burden of establishing their standing, *see*, *e.g.*, *KERM, Inc. v. FCC*, 353 F.3d 57, 59 (D.C. Cir. 2004).

Associations such as petitioners have representational standing if:  (1) at least one of their members has standing to sue in her or his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of an

individual member in the lawsuit. *Cmtys. Against Runway Expansion, Inc. v. FAA*, 355 F.3d 678, 684 (D.C. Cir. 2004) (citing *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)); *see also United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553-57 (1996) (explaining that *Hunt* lays out the test for associational standing, which is one strand of representational standing). In this case, we can find no reason to doubt that petitioners satisfy the latter two requirements of associational standing, and neither the FCC nor MPAA suggests otherwise. Therefore, petitioners need not address these points in their supplemental submissions. *See Sierra Club*, 292 F.3d at 898. The focus of our inquiry is whether at least one of petitioners' members has standing to sue in her or his own right.

In order to meet this prong of the associational standing test, petitioners must demonstrate that at least one of their members satisfies the three elements that form the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

> First, [at least one of petitioners' members] must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore* [*v. Arkansas*, 495 U.S. 149, 155 (1990)]. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.*, at 38, 43.

*Id.* at 560-61 (additional citations omitted) (alterations in original). The only thing at issue in this case is the injury-in-fact prong of Article III standing, for causation and redressability are obvious if petitioners can demonstrate injury.

With regard to the injury-in-fact prong of the standing test, petitioners need not prove the merits of their case in order to demonstrate that they have Article III standing. *Sierra Club*, 292 F.3d at 898. Rather, in order to establish injury in fact, petitioners must show that there is a substantial probability that the FCC's order will harm the concrete and particularized interests of at least one of their members. *See id.; see also Warth v. Seldin*, 422 U.S. 490, 511 (1975) (for an association to have representational standing, "[t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action that would make out a justiciable case had the members themselves brought suit.").

\* \* \* \*

Before we turn to what is required of petitioners in this case, a further word about *Sierra Club* is in order. The decision in *Sierra Club* reminds petitioners challenging administrative actions that, *when they have good reason to know that their standing is not self-evident*, they should explain the basis for their standing at the earliest appropriate stage in the litigation. In other words, *Sierra Club* makes it clear that a party who knows or should know that there are doubts about its standing should address those doubts before oral argument. *See Sierra Club*, 292 F.3d at 899-901. This prevents unfairness to an agency that may have reasonable grounds to challenge a petitioner's standing, and it conserves the resources of the court and the litigants. *See id.* at 901-02. *Sierra Club* does not, however, prescribe a protocol for cases in which the parties reasonably, but incorrectly, assume that a petitioner's standing is self-evident.

MPAA apparently reads *Sierra Club* to go significantly further, creating an inflexible rule under which the court, in assessing Article III standing, can look only to submissions accompanying petitioner's opening brief or those filed in response to a motion to dismiss for lack of standing. *See* MPAA Br. at 1; MPAA Letter of 2/25/05 (arguing that further briefing on standing is not warranted as "[p]etitioners have already had two opportunities to brief the issue"). MPAA's interpretation of *Sierra Club* rests on a faulty construction of the opinion and is inconsistent with the law of this circuit. Nothing in *Sierra Club* suggests that it is intended to create a "gotcha" trap whereby parties who reasonably think their standing is self-evident nonetheless may have their cases summarily dismissed if they fail to document fully their standing at the earliest possible stage in the litigation. And *Sierra Club* surely does not purport to address a situation like the one we face in this case, where both petitioners and the Government reasonably assumed that petitioners' standing was self-evident, the court did not seek additional information before oral argument, and the intervenor's challenge appeared to be based more on what it perceived to be the pleading requirements of *Sierra Club* than on the requirements of Article III standing.

Moreover, *Sierra Club* did not alter the precedent of this circuit, which makes it clear that the court may *sua sponte* seek supplemental submissions after oral argument if it determines that more information is necessary to satisfy itself that a petitioner has Article III standing. *See, e.g., United States Telecom Ass'n v. FCC*, 295 F.3d 1326, 1330-31 (D.C. Cir. 2002) (noting that the court had directed the parties to submit supplemental briefs on standing when standing had not been disputed by respondent or intervenor in their opening briefs, and allowing petitioner to submit affidavits after oral argument that were ultimately found to establish Article III standing); *Action on Smoking & Health (ASH) v. Dep't of Labor*, 100 F.3d 991, 992 (D.C. Cir. 1996) (noting that the court had requested post-

argument affidavits to decide whether Article III standing existed).  In *Communities Against Runway Expansion,* we ruled that, even though petitioners had failed to include submissions adequate to demonstrate standing with their opening brief, *Sierra Club* did not preclude the court from considering declarations submitted along with petitioners' reply brief, after an intervenor had challenged petitioners' standing.  *See* 355 F.3d at 684-85.  We ultimately relied on those declarations to find that petitioners had standing, concluding that the intervenor had not been unfairly prejudiced because the additional submissions demonstrated petitioners' standing beyond any doubt.  *See id.* at 685.  It is also clear that *Sierra Club* does not preclude the court from requesting post-argument briefing to resolve questions regarding Article III standing.  *See Ctr. for Energy & Econ. Dev. v. EPA*, No. 03-1222, 2005 WL 386976, at *3-4 (D.C. Cir. Feb. 18, 2005) (following oral argument, the court *sua sponte* invited the parties to brief whether the Center's members suffered any harm from the agency's action).

While *Sierra Club* lays out the general rule that petitioners whose standing is not self-evident should demonstrate their standing at the first appropriate point in the litigation, our case law is clear that the court retains the discretion to seek supplemental submissions from the parties if it decides that more information is necessary to determine whether petitioners, in fact, have standing.  Depending on the circumstances of the case, the court may allow petitioners to support their standing in their reply brief, in affidavits submitted along with the reply brief, through citations to the existing record at oral argument, or through additional briefing or affidavits submitted to the court after oral argument.  To prevent the sandbagging of opposing parties, the court may also, as appropriate, allow parties challenging a petitioner's standing to respond to the petitioner's additional submissions.

MPAA's "gotcha" construction of *Sierra Club* is inconsistent with our precedent and would have the undesirable effect of causing parties to include long jurisdictional statements in practically all opening briefs for fear that the court might find their standing less than self-evident. This would waste, rather than conserve, judicial resources and place an unnecessary burden on litigants.

\* \* \* \*

Obviously, a petitioner's claim that its standing is self-evident is not dispositive of the issue. There may be a disjunction between what a petitioner assumes that the court knows about its organization and operation and what the court actually knows, thus causing the petitioner to assume incorrectly that its standing is self-evident. Thus, whether standing is self-evident must be judged from the perspective of the court, not the petitioner. A petitioner who is unsure whether the court will comprehend its standing should provide the court with enough information to ensure that standing can be confirmed. And if a party raises a comprehensible challenge to a petitioner's standing, the petitioner is well advised to respond with precision and clarity to make it clear that standing is present.

As we have already noted, this case poses a situation not expressly contemplated by *Sierra Club*. Petitioners' jurisdictional statement in their opening brief asserted a basis for standing. The Commission did not contest standing, either in its brief or when pressed at oral argument, lending some credence to the reasonableness of petitioners' assumption that standing was self-evident. MPAA challenged standing in its brief, but the challenge was at best cryptic and focused more on the pleading requirements of *Sierra Club* than on the requirements of Article III standing. Nonetheless, as was clear from some of the questioning at oral argument, the judges struggled with the issue. It became clear during oral argument that petitioners believed that the information in the administrative record

conclusively confirmed the nature of their organizations and the injury that they would suffer if the FCC's new rule was implemented. This was made even more clear by petitioners' post-hearing submissions, which simply pointed the court to the administrative record. Having reviewed the administrative record, we can now understand why petitioners may have thought that standing was self-evident. Nonetheless, we remain dubitante.

In the future, petitioners whose standing is challenged should be more precise in their response, no matter how cryptic the challenge may appear to be. However, *Sierra Club* gives no clear guidance with respect to a case like this, *i.e.*, a case in which neither petitioners nor the Commission were unreasonable in assuming that petitioners' standing was self-evident and the intervenor's challenge was vague and unfocused. As we have noted, the court clearly has the authority to seek information from a party, either before, during, or after oral argument, to clarify standing. Indeed, even if *Sierra Club* did apply here, the circumstances of this case would implicate *Sierra Club*'s statement that the court may allow petitioners to submit post-argument affidavits addressing the issue of standing when "good cause [is] shown." *Sierra Club*, 292 F.3d at 900.

\* \* \* \*

We turn now to what is required of petitioners in this case. We note that, in joint comments submitted to the FCC pursuant to a notice of proposed rulemaking on the broadcast flag regime, *see In the Matter of Digital Broadcast Copy Protection, Notice of Proposed Rulemaking*, 17 F.C.C.R. 16,027 (2002), and in various submissions to this court, the American Library Association, the American Association of Law Libraries, the Association of Research Libraries, the Medical Library Association, and the Special Library Association raised the possible effects of the adoption of a broadcast flag regime on the ability of libraries to make legitimate uses of digital content

related to their research and educational missions. *See* Joint Comments of 12/6/02, J.A. 669-70. The court now seeks amplification of these points and, in particular, requests that petitioners address several matters in affidavits we request with this opinion.

First, is the Television News Archive at Vanderbilt University, discussed at J.A. 669, a member of any of the petitioning associations? If not, are any of petitioners' members engaged in the process of storing television broadcasts and sending copies of those broadcasts to distant locations?

Second, petitioners must explain whether there is a substantial probability that the Commission's broadcast flag regime will hinder the ability of any of petitioners' members to engage in otherwise permissible copying and distribution of television broadcasts to distant locations and, if so, in precisely what way such hindrance is likely to occur.

Third, in their Joint Comments of 12/6/02, American Library, *et al.* stated: "A broadcast flag . . . would hinder precisely what the TEACH Act is designed to promote. For example, an educator who wishes to use excerpts from a television news program to illustrate a lesson in the electronic classroom might not be able to record the program, nor to incorporate the material into a lesson designed for students in a class whose access is through the Internet." J.A. 670. Do any of petitioners' members qualify as "accredited nonprofit educational institution[s]" under 17 U.S.C. § 110? If so, petitioners must explain precisely how the broadcast flag regime will hinder these members in their ability to engage in distance learning or other electronic teaching covered by the TEACH Act. *See* Technology, Education, and Copyright Harmonization Act, Pub. L. No. 107-273, § 13301, 116 Stat. 1758, 1910 (2002).

Finally, are there any injuries (not including the potential increased cost of consumer electronics), not addressed by the

foregoing questions, that identifiable members of petitioners' organizations will face as a result of the broadcast flag regime? If so, petitioners must identify the relevant member or members and describe the precise nature of the injury that will be caused by the FCC's adoption of the broadcast flag regime.

Petitioners should file affidavits addressing the questions raised above within two weeks of the issuance of this opinion, along with an accompanying brief of no more than 4,000 words. We remind petitioners that, in order for them to establish injury in fact, these affidavits must include specific facts demonstrating that there is a substantial probability that the FCC's order will "directly affect[]" the ability of at least one of petitioners' members to make legitimate use of digital content in relation to its research or educational missions or that the FCC's order will directly affect some other judicially cognizable interest. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000). Affidavits containing "general averments," "conclusory allegations," and "speculative 'some day' intentions" are inadequate to demonstrate injury in fact. *Id.* (internal quotations and citations omitted). Finally, if they so desire, the Commission and MPAA will be allowed ten calendar days after petitioners submit their affidavits and brief to submit briefs of not more than 4,000 words each addressing petitioners' Article III standing.

*So ordered*.

SENTELLE, *Circuit Judge*, *dissenting*: I dissent from what appears to me to be provision of an opportunity to a petitioner before this Court to create a new record establishing justiciability and jurisdiction not present in the record before us. As the majority notes, this Court, like all federal courts, "cannot act in the absence of jurisdiction." *See, e.g.*, *B&J Oil & Gas v. FERC*, 353 F.3d 71, 74-75 (D.C. Cir. 2004). As the majority further notes, jurisdictional issues may, indeed must, be raised by the court *sua sponte* when jurisdiction is lacking. It is also true that we have exercised our discretion to permit litigants to clarify the record by filing further affidavits on jurisdictional subjects, specifically standing, even after oral argument. *See, e.g.*, *Action on Smoking and Health (ASH) v. Dep't of Labor*, 100 F.3d 991, 992 (D.C. Cir. 1996). However, the broad invitation and detailed "road map" offered in the majority's opinion appears to me not to ask the petitioner to clarify its standing, but to offer us a further record to create standing where none is present on the record before us.

I therefore would find the governing precedent not in *ASH*, but rather in such cases as *AmericaWest Airlines, Inc. v. Burnley*, 838 F.2d 1343 (D.C. Cir. 1988), in which we have dismissed petitions of litigants who, after ample opportunity on the record before us, have not demonstrated standing. I wholeheartedly agree with the majority that *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002), should not be read as creating a "gotcha" under which we dismiss meritorious petitions because litigants did not support their standing when they could not reasonably have been expected to know that they needed to. Indeed, I question whether we even possess the authority to make such a rule. However, when, as here, standing is at best questionable and an intervenor has called the attention of all parties to the questionable nature of that standing, I do not understand why we need to find that petitioners fall within the group of litigants "whose standing is not self evident" described in *Sierra Club*, 292 F.3d at 900, in order to dismiss the petition

for lack of jurisdiction. *Sierra Club* merely recited the unremarkable and long-standing proposition that "[w]hen the petitioner's standing is not self-evident, . . . the petitioner must supplement the record to the extent necessary to explain and substantiate its entitlement to judicial review." *Id. See, e.g.*, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 190 (1936) ("As [a plaintiff] is seeking relief subject to th[e] supervision [of a federal court], it follows that he must carry throughout the litigation the burden that he is properly in court."). There was no *Sierra Club* precedent at the time of, for example, *AmericaWest*, and yet we did not hesitate to dismiss for lack of jurisdiction. I would do so here. I therefore respectfully dissent from the majority's opinion.