ANR PIPELINE COMPANY,
Petitioner

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent

BP Exploration & Oil, Inc.,
et al., Intervenors

No. 99–1010.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 11, 2000.

Decided March 10, 2000.

Daniel F. Collins argued the cause for petitioner. With him on the briefs were G. Mark Cook and Howard L. Nelson.

Monique Penn–Jenkins, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were Jay L. Witkin, Solicitor, and Timm L. Abendroth, Attorney. Susan J. Court, Special Counsel, entered an appearance.

Linda G. Stuntz argued the cause for intervenors Nautilus Pipeline Company, L.L.C., et al. With her on the brief were Matthew Merrill Schreck, Frederick T. Kolb, Jon L. Brunenkant, Cheryl J. Walker, Charles Joseph McClees, Karol L. Newman, and Robert C. Murray. Lisa D. Harville entered an appearance.

Before: SILBERMAN, WILLIAMS, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

ANR Pipeline Company petitions for review of an order of the Federal Energy Regulatory Commission (FERC) permitting a competitor to build and operate a natural gas pipeline. Insofar as ANR contends FERC acted unreasonably in refusing to hold a comparative hearing, we deny the petition. And to the extent petitioner raises environmental objections to FERC's decision, we conclude that it lacks standing and therefore dismiss the petition.

## I.

ANR operates a natural gas pipeline system. The system takes gas from several different platforms, including Ship Shoal Block 207 in the Gulf of Mexico off the coast of Louisiana, where it receives gas from Manta Ray Offshore Gathering Company. It transports this gas to its onshore compression station in Patterson, Louisiana. From there, its interstate pipelines

deliver the gas directly to customers, most of whom are in the Midwest, or to connections with other pipeline systems for delivery elsewhere.

Manta Ray is owned by affiliates of Shell Offshore, Inc., Marathon Oil Company, and Leviathan Gas Pipeline Partners, L.P. Affiliates of those three companies formed the Nautilus Pipeline Company, L.L.C., to build a new pipeline from Ship Shoal Block 207 to the onshore pipeline grid. In September 1996, Nautilus filed an application with the Commission under § 7(c) of the Natural Gas Act for permission to construct and operate 101 miles of 30–inch diameter pipe. The proposed line was to run from Block 207 to an onshore station in Garden City, Louisiana.

A month later, ANR petitioned for a certificate under § 7(c) for permission to expand the capacity of its existing offshore system. It sought to add about 37 miles of 30–inch mainline loop, increasing its capacity to transport gas from Block 207 to the mainland. And then it promptly filed motions in both the ANR and the Nautilus dockets to consolidate the two proceedings and set the projects for a comparative evidentiary hearing. It argued that *Ashbacker Radio Corp. v. FCC*, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945), required a comparative hearing because its application and the Nautilus application were mutually exclusive. Since it contended the capacity of the Manta Ray system was not sufficient to supply gas to both projects, ANR reasoned that the construction of one project would preclude construction of the other. It invoked a 1968 FERC policy statement directing the Commission staff to review applications to construct facilities in the Gulf "on both a joint and individual company basis" with a view toward promoting joint arrangements that would ensure the full utilization of those facilities. *See* 18 C.F.R. § 2.65. And it raised as further support for a comparative hearing leading to a choice of only one pipeline the

National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, *et seq.*

The Commission denied ANR's motion for consolidation and a comparative hearing because in its view the two projects were not necessarily mutually exclusive and the public interest could best be served by allowing market forces to channel demand. *See Nautilus Pipeline Co.*, 78 F.E.R.C. ¶ 61,325 (1997); *ANR Pipeline Co.*, 78 F.E.R.C. ¶ 61,326 (1997) (*"ANR I"*). It approved the Nautilus application, allowing construction to begin. At the same time it issued a preliminary determination that ANR's application was also in the public interest, subject to completion of an environmental assessment. ANR requested rehearing of both orders. A few days later it sought a stay of the order allowing Nautilus to begin construction. The Commission denied the stay, *see Nautilus Pipeline Co.*, 79 F.E.R.C. ¶ 61,151 (1998), and we denied ANR's petition for a writ of prohibition and stay. The Commission ultimately granted ANR's certificate but denied its motions for rehearing. *See Nautilus Pipeline Co.*, 85 F.E.R.C. ¶ 61,200 (1998); *ANR Pipeline Co.*, 85 F.E.R.C. ¶ 61,056 (1998) (*"ANR II"*). ANR petitioned for review of the Commission's rulings in the Nautilus proceeding.[1]

## II.

Petitioner claims that the Commission was obliged under the *Ashbacker* doctrine to hold a comparative hearing before it granted the Nautilus certificate. But *Ashbacker*, which involved a grant of a broadcast license by the FCC, applies only if the certificates are, in fact, mutually exclusive. In that case both applications could not have been granted because both petitioning companies could not broadcast on the same frequency (two men on second base). And "where two bona fide applications are mutually exclusive the grant of one with-

---

1. Nautilus has completed its pipeline—which would raise an interesting remedial question

if we agreed with ANR.

out a hearing to both deprives the loser of the opportunity which Congress chose to give him." *Ashbacker,* 326 U.S. at 333, 66 S.Ct. 148.

■ Petitioner contends that *Ashbacker* is not limited to cases of physical exclusivity but extends to situations in which economic or other factors preclude the granting of both licenses. The Commission does not dispute this, at least directly. Instead, it responds that the applications of ANR and Nautilus were not mutually exclusive; indeed both were granted. ANR's substantive objection then is that the Commission unreasonably concluded that the projects were not mutually exclusive.

The pipelines do run roughly parallel. But "[m]any existing pipelines share similar routes while serving different production areas and linking different fields." *ANR I,* 78 F.E.R.C. at 62,405. Here FERC found that the proposals were not necessarily "dependent upon transporting the same reserves or upon serving the same customers." *Id.* While the Commission recognized that Manta Ray could not deliver enough gas to fill both the Nautilus pipeline and the ANR expansion, it noted that ANR's system "accesses an area of the OCS [Outer Continental Shelf] where . . . large new gas reserves are being developed." *ANR II,* 85 F.E.R.C. at 61,177. ANR is hardly in a position to dispute this finding, for its own application asserted that "there are currently under development significant new gas reserves" that will lead to a "substantial increase in offshore production." Petitioner seems to argue that the Commission was not entitled to look down the road, to consider further development in its certificate proceeding. But that contention runs afoul of the specific language of § 7(e) of the Natural Gas Act which directs FERC to approve a project when it "is *or will be* required by the present *or future* public convenience and necessity." 15 U.S.C. § 717f(e) (emphasis added).

The Commission recognized in issuing ANR's certificate as well that "if the ship-

pers of the additional reserves coming on line find that ANR's project is attractive from an economic standpoint, they will subscribe to ANR's project and assure its ultimate success." *ANR II,* 85 F.E.R.C. at 61,177. It imposed an at-risk condition on ANR's certificate (as it had on Nautilus's) so that the pipelines' customers would not bear any of the risk associated with either project. This approach left ANR "free to compete with Nautilus and other projects for markets and shippers," allowing ANR to "consider the likelihood that market forces will respond to the need for upstream feeder capacity that can move the additional gas reserves being developed" in deciding whether to proceed with construction. *Id.* Presumably, that leaves ANR in the position of building its pipeline extension only when sufficient demand justifies it, or when it can effectively wean existing customers away from Nautilus.

To be sure, this leaves ANR at something of a disadvantage, for the Nautilus pipeline is already in place and serving customers, because Nautilus filed its application first. So it might be thought that the short-term difficulty of competing with an incumbent pipeline makes the two pipelines in some sense exclusive. But FERC seems at least implicitly to have concluded that this kind of economic disadvantage is different from a situation in which economic factors make it possible to grant only one license, so that *Ashbacker* does not apply here. We think its judgment was reasonable.

ANR protests the Commission's reliance on market forces—even in this limited fashion—is inconsistent with the premise of the Natural Gas Act. It is up to the Commission, not the market, to determine what is in the public interest. We do not understand, however, how the Commission could determine the public interest without taking into account future demand which is what the Commission means by "market forces," nor do we think that the general language of § 7(e) precludes FERC from encouraging competition.

It may well be that petitioner's more basic concern is that competition will not really be free in this setting because Nautilus is affiliated with Manta Ray. "Due to the vertically integrated nature of the Nautilus project," it argues, "it cannot be assumed that the owner-shippers of Nautilus will choose the least cost transportation alternative." But Manta Ray has the same incentive to minimize its shipping cost as any other producer in the competitive market for natural gas (petitioner does not claim that the downstream market is not competitive). Its owners would have no reason to build the Nautilus pipeline if it would be cheaper for them to use ANR's. There is nothing inherently suspicious about the vertical integration of Nautilus and Manta Ray. *Cf. Jack Walters & Sons Corp. v. Morton Building, Inc.*, 737 F.2d 698, 710–11 (7th Cir.1984).

█ Even if FERC's decision is in conformity with its statutory authority, ANR contends that 18 C.F.R. § 2.65 required FERC to hold a comparative hearing. That provision states, it will be recalled, that the Commission directs its staff to review applications for construction of pipelines in the Louisiana offshore area "on both a joint and individual company basis with a view toward the development of pipeline company gas exchange procedures that will minimize cross-hauls and toward the promotion of joint use arrangements that will assure the early full utilization of large capacity facilities in the Outer Continental Shelf area." It is argued that this section imposes "legal requirements that are designed to foster the maximum use of these high-cost facilities," and that the Commission unlawfully disregarded its own regulation.

█ The difficulty with this argument is that § 2.65 is a policy statement, not a regulation. Tellingly, the section begins: "It will be the general policy of the Commission...." It is not a rule that is binding on FERC or the public—nor could it be, for it was promulgated without notice

and comment. *See Order No. 363*, 39 F.P.C. 925, 926 (1968) ("The statement issued herein concerns a matter of general policy which does not require notice or hearing" under the APA.). A policy statement does not become a regulation simply because an agency chooses to publish it in the Code of Federal Regulations.

An agency may not of course depart from prior policy without explanation. But FERC explained how changed circumstances justified a new policy. It pointed out that the "structure of the natural gas industry as well as the Commission's regulatory approach have undergone significant changes" since § 2.65 was promulgated. *ANR II*, 85 F.E.R.C. at 61,176. More specifically, it explained that new technology has made it possible to produce gas from very deep waters, giving access to reserves of gas that are much larger than those available in the 1960s. For that reason, "[t]he challenge facing today's offshore industry is in establishing an infrastructure capable of transporting new OCS production to diverse onshore markets rather than allocating limited production among existing pipelines." *ANR I*, 78 F.E.R.C. at 62,406. It was entirely appropriate for the Commission to change its regulatory approach in response to technological changes in the industry.[2]

### III.

█ ANR's remaining argument is that the Commission violated NEPA by failing to conduct a comparative hearing. NEPA requires agencies to evaluate the environmental impact of a project as compared to its alternatives. *See* 42 U.S.C. § 4332(2)(C)(iii). ANR contends that its project is a more environmentally friendly alternative to that of Nautilus, and one pipeline is environmentally better than two, so FERC should have considered the two pipelines together before approving either. Although neither FERC nor the intervenor has questioned ANR's standing

---

**2.** In light of the extensive changes in FERC's regulatory approach since 1968, we think that

it might be appropriate for the Commission to amend § 2.65 to reflect its new policy.

to raise this claim, we are obliged to do so sua sponte. *See, e.g., De Jesus Ramirez v. Reich,* 156 F.3d 1273, 1276 (D.C.Cir.1998).

 The jurisdictional section of the Natural Gas Act provides that "[a]ny party ... aggrieved by an order issued by the Commission" may petition for review. 15 U.S.C. § 717(b). To be "aggrieved," a party must assert an interest that is arguably within the zone of interests intended to be protected by the statute on which it relies. *See Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). NEPA, of course, is a statute aimed at the protection of the environment. But ANR has not alleged that it will suffer any environmental injury as a result of the Commission's action. Indeed, it has not alleged that it has any interest in the environment at all. Its only concern is with suppressing competition from Nautilus, and that economic interest is not within the zone of interests protected by NEPA. *See Nevada Land Action Ass'n v. United States Forest Serv.,* 8 F.3d 713, 716 (9th Cir.1993); *cf. Competitive Enterprise Inst. v. NHTSA,* 901 F.2d 107, 123–24 (D.C.Cir.1990) (informational injury confers standing under NEPA only when the information sought relates to environmental interests). We therefore conclude that ANR lacks prudential standing to bring a NEPA challenge to the Commission's action.

\* \* \*

The petition for review is denied in part and dismissed in part.

*So ordered.*