# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 20, 2015          July 21, 2015

No. 14-1062

GUNPOWDER RIVERKEEPER,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

COLUMBIA GAS TRANSMISSION, LLC,
INTERVENOR

———

On Petition for Review of Orders of
the Federal Energy Regulatory Commission

———

*Kenneth T. Kristl* argued the cause and filed the briefs for petitioner.

*Elizabeth E. Rylander*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *David L. Morenoff*, General Counsel, and *Robert H. Solomon*, Solicitor.

*S. Diane Neal*, *Tyler Brown*, and *Paul Korman* were on the brief for intervenor Columbia Gas Transmission, LLC in support of respondent. *Fredric J. George* entered an appearance.

Before: ROGERS and BROWN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

Opinion dissenting in part and concurring in the judgment filed by *Circuit Judge* ROGERS.

GINSBURG, *Senior Circuit Judge*: The Federal Energy Regulatory Commission issued a certificate of public convenience and necessity to Columbia Gas Transmission, LLC, conditionally authorizing the company to extend a natural gas pipeline in Maryland. Gunpowder Riverkeeper, an association of individuals who "work, live, and recreate along the Gunpowder River and its tributaries," petitioned for rehearing, which the Commission denied. Gunpowder then petitioned this court for review of the Commission's order granting the certificate and Columbia intervened in support of the Commission. We deny Gunpowder's petition for want of a legislatively conferred cause of action.

## I.    Background

The Natural Gas Act (NGA) requires any party seeking to construct a facility for transporting natural gas first to obtain a certificate of public convenience and necessity from the Federal Energy Regulatory Commission. 15 U.S.C. § 717f(c)(1)(A). With an exception not relevant here, the Commission grants a certificate only if the construction project "is or will be required by the present or future public convenience and necessity," and conditions it upon "such reasonable terms and conditions as the public convenience and necessity may require." 15 U.S.C. § 717f(e).

In issuing a certificate, however, the Commission must comply with the separate statutory mandate of the National Environmental Policy Act (NEPA). *See* 42 U.S.C. § 4332(2)(C). In accordance with the NEPA, every application for a certificate prompts an environmental review. Generally, the Commission first prepares an environmental assessment and, unless it determines the proposed project would have no significant environmental impact, it goes on to prepare a full-blown environmental impact statement. *See* 40 C.F.R. § 1501.4.

In addition, the Clean Water Act (CWA) requires every applicant for a federal permit authorizing any action that "may result in any discharge into the navigable waters" of the United States to submit to the permitting agency a certification from the appropriate state or interstate agency "that any such discharge will comply" with the CWA. 33 U.S.C. § 1341(a)(1).

Following the Commission's issuance of the conditional certificate here at issue, Gunpowder filed a petition for rehearing on the ground that when the certificate was issued Columbia had not received from the State of Maryland the certification required by the CWA and that, absent that certification, "the cumulative impacts of the project cognizable under the [NEPA] are unknown." The Commission denied Gunpowder's petition for rehearing.

The conditional certificate issued to Columbia authorized it to begin construction of the extension only after receiving all required permits, and only after obtaining further authorization from the Commission. Under Section 7 of the NGA, however, issuance of the conditional certificate enabled Columbia immediately to exercise the power of eminent domain to obtain "the necessary right-of-way to construct,

operate, and maintain a pipe line" and to place any "equipment necessary to the proper operation of such pipe line." 15 U.S.C. § 171f(h); *see also, e.g.*, *Columbia Gas Transmission LLC v. 0.85 Acres, More or Less, in Harford Cnty, Md*, No. 1:14-cv-02288, 2014 WL 4471541 (D. Md. Sept. 8, 2014) (so interpreting the certificate).[*] The conditional order required Columbia to "ensure that it restores and re-vegetates affected properties, which will minimize property value impacts, and ... compensate landowners for damages like tree loss."

Gunpowder here argues the Commission's issuance of the conditional certificate of public convenience and necessity violated both the CWA and the NEPA.

## II. Analysis

We address first the court's jurisdiction over this case pursuant to Article III of the Constitution of the United States. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (noting that jurisdiction must "be established as a threshold matter"). We then turn to the "zone of interests" analysis.

## A. Jurisdiction

The Commission has called into question whether Gunpowder has standing under Article III to challenge the conditional certificate. Specifically, the Commission suggests that whether Gunpowder has standing is a "close call" because "[i]ts brief ... does not show that its members have suffered injury from actual or threatened eminent domain

---

[*] Whether the certificate was correctly construed as authorizing Columbia to exercise the power of eminent domain is not before this court, and we do not decide it.

actions." If Gunpowder lacks constitutional standing, then this court lacks jurisdiction to address its petition for review. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992).

### 1. Standing

To invoke the jurisdiction of the court, an association acting on behalf of its members must show that "its members would ... have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). A member of an organization would have standing if he, she, or it (1) "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "the injury is fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 180-81.

Gunpowder points to affidavits of certain of its members to show they have suffered an injury in fact because their property is subject to eminent domain proceedings that have been or may be started by Columbia pursuant to its plan to extend its natural gas pipeline. We have previously held that a landowner made subject to eminent domain by a decision of the Commission has been injured in fact because the landowner will be forced either to sell its property to the pipeline company or to suffer the property to be taken through eminent domain. *See B&J Oil & Gas v. FERC*, 353 F.3d 71, 74-75 (D.C. Cir. 2004). Contrary to the implicit premise of the Commission's argument, it is not necessary in order to

show injury that property already have been taken, or even that eminent domain proceedings have begun; it is enough that they have been deemed authorized and will proceed absent a sale by the owner.[*] *See id.* at 75. The Commission's alternative argument — that our precedent is inapplicable because in this case "it does not appear that the process will extinguish landowners' property interest" — is similarly bootless, as it addresses only the degree, not the fact, of the landowners' injury. Finally, because the threat of eminent domain derives from the conditional certificate, the injury would be redressed by a favorable decision of the court, which would require vacatur of the order granting the certificate. In sum, a member of Gunpowder against whom eminent domain proceedings have been instituted or threatened would have constitutional standing to pursue the present case.

As for Gunpowder's standing as an association to bring this case on behalf of its injured members, we note that Gunpowder's undisputed purpose is to preserve and protect the Gunpowder River watershed. Gunpowder's claims under the NEPA and the CWA are clearly germane to that purpose, as both statutes aim to prevent degradation of the natural environment. Finally, because Gunpowder's petition for review concerns only the question whether the conditional certificate issued by the Commission is lawful, it is not necessary for any individual member of Gunpowder to participate in this proceeding in order to secure effective relief for all its injured members. *See Warth v. Seldin*, 422 U.S. 490, 515 (1975) ("If ... the association seeks a declaration,

[*] Gunpowder has advised the court that, subsequent to its initial briefing, "Columbia won partial summary judgment in its condemnation action against [its] affiants." For the reason stated above, however, we need not rely upon this extra-record development.

injunction, or some other form of prospective relief, it can be reasonably supposed that the remedy, if granted, will inure to the benefit of those members ... actually injured"). Gunpowder therefore satisfies the requirements for Article III standing.

### 2. Mootness

Because Maryland has issued the certification required by the CWA, Columbia argues Gunpowder's petition for review is moot and therefore non-justiciable. *See Loughlin v. United States*, 393 F.3d 155, 169 (D.C. Cir. 2004) (describing the mootness doctrine as a "justiciability doctrine[]"). A case is moot if "events have so transpired that the decision [of the court] will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Daimler Trucks N. Am. LLC v. EPA*, 745 F.3d 1212, 1216 (D.C. Cir. 2013).

Columbia's argument fails because it disregards Gunpowder's challenge under the NEPA, which is unaffected by issuance of the state certification required by the CWA. The disputed validity of Columbia's conditional certificate, and the power of eminent domain that depends upon it, therefore continue to present a live controversy. Consequently, the court has jurisdiction of the present controversy.

## B. Zone of interests

In addition to constitutional standing, a plaintiff must have a valid cause of action for the court to proceed to the merits of its claim. *See Natural Res. Def. Council v. EPA*, 755 F.3d 1010, 1018 (D.C. Cir. 2014) (denying a petition for review because the petitioner lacked a cause of action).

Pursuant to the most recent teaching of the Supreme Court, we "presume that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

In this case, Gunpowder claims an interest, and hence a cause of action, under each of three distinct statutes: the NGA, the NEPA, and the CWA. The Commission argues that Gunpowder's asserted interest — avoiding harm to its members' property rights — falls outside the zones of interest protected or regulated by the NEPA and the CWA, and that its alleged non-compliance with those statutes falls outside the zone of interests protected or regulated by the NGA. We conclude Gunpowder's interest in protecting its members' property from eminent domain in the face of alleged non-compliance with the NEPA and the CWA does not fall within the zones of interest protected by any of the three aforementioned statutes.

### 1. The NGA

The NGA provides that "[a]ny party to a proceeding under this chapter aggrieved by an order issued by the Commission ... may obtain a review of such order." 15 U.S.C. § 717r(b). A party is "aggrieved" within the meaning of the NGA "if as a result of an order of [the Commission] it has sustained injury in fact to an interest arguably within the zone of interests to be protected or regulated" by the Commission under the NGA. *Moreau v. FERC*, 982 F.2d 556, 564 (D.C. Cir. 1993) (citation and internal quotation marks omitted). A party may also be "aggrieved" within the meaning of the NGA if it "assert[s] an interest that is arguably within the zone of interests intended to be protected by the

statute on which it relies" — even if that statute is not the NGA itself — in which case, however, the zone of interests analysis is conducted with respect to the statute upon which the party relies. *ANR Pipeline Co. v. FERC*, 205 F.3d 403, 408 (D.C. Cir. 2000).

Although "the property interests of neighboring landowners arguably fall within the zone of interests the NGA protects," *Moreau*, 982 F.2d at 564 n.3, the zone of interests of the NGA does not encompass injuries arising out of violations of other statutes, such as the CWA or the NEPA. Therefore, when a petitioner for review pursuant to the NGA implicitly invoked a separate statutory cause of action as the foundation of its claim, we proceeded to determine whether that petitioner's interests came within the zone of interests protected or regulated by that separate statute. *See ANR Pipeline Co.*, 205 F.3d at 407-08. In that case, as here, the petitioner argued the Commission had failed to comply with the NEPA. *Id.* at 407. We therefore treated the petitioner's complaint as "a NEPA challenge" and proceeded to evaluate whether the petitioner's grievance came within the zone of interests protected by the NEPA. *Id.* at 407-08.

Here, Gunpowder has invoked both the NEPA and the CWA. We proceed accordingly to evaluate whether its interest falls within the zone of interests protected by either of those statutes.

## 2. The NEPA

The zone of interests protected by the NEPA is, as its name implies, environmental; economic interests simply do not fall within that zone. *Id.* (so noting with respect to the petitioner's "economic interest" in suppressing competition). To be sure, a landowner is not disqualified from asserting a

claim under the NEPA simply because it has an economic interest in defeating a challenged regulatory action, *Realty Income Trust v. Eckerd*, 564 F.2d 447, 452 (D.C. Cir. 1977) ("[A] party is not precluded from asserting cognizable injury to environmental values because his 'real' or 'obvious' interest may be viewed as monetary"), but it still must assert an environmental harm in order to come within the relevant zone of interests. *Id.* at 452 & n.10. As this court has explained specifically with respect to eminent domain as the source of an injury, "the 'zone of interest' under NEPA encompasses environmental values, read, of course, very broadly, but does not encompass monetary interests alone." *Id.* at 452 n.11.

In this case, Gunpowder has alleged only that some of its members "are subject to actual or the threat of eminent domain proceedings now that will result in a loss of property rights." Although the affidavits of Gunpowder's members contain some assertions of injury that could be construed as environmental, *see, e.g.*, Affidavit of SallyAnn & Michael Mickel, (stating affiants "feel the aesthetic, emotional, and physical loss of our trees"), the petitioner itself does not offer them in that spirit; indeed, Gunpowder does not invoke them for the purpose of showing environmental harm even in replying to the Commission's argument that Gunpowder fails the zone of interests test under the CWA and NEPA. *Cf. Bd. of Regents of the Univ. of Wash. v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996) (noting that arguments not clearly raised in a party's opening brief are generally considered to be forfeit). Because Gunpowder did not argue that its members would suffer any environmental harm — indeed, it expressly disclaimed the need to do so — we conclude the petitioner

does not come within the zone of interests protected by the NEPA.[*]

### 3. The CWA

Although this circuit has never addressed the question whether an injury arising specifically by reason of eminent domain can sustain a claim under the CWA, that statute by its terms, like the NEPA, is aimed clearly and solely at preventing environmental harms. *See* 33 U.S.C. § 1251(a) ("The objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters"). This court has therefore held that claims not aimed at "protect[ing] navigable rivers and streams from pollution" or at "requir[ing] those who desire to discharge pollutants into the waterways to obtain a permit for doing so" fall outside the zone of interests protected by the CWA. *Citizens Coordinating Comm. on Friendship Heights, Inc. v. Wash. Metro. Area Transit Auth.*, 765 F.2d 1169, 1173 (D.C. Cir. 1985) (denying standing to a corporate plaintiff that alleged injury based upon the "seepage of diesel fuel into its ground water collection system and elevator pit"). Our sister circuits agree. *See Dan Caputo Co. v. Russian River Cnty. Sanitation Dist.*, 749 F.2d 571, 575 (9th Cir. 1984) (denying standing under the CWA because the plaintiff's claim "does not arise

---

[*] Judge Rogers asserts that "[t]he record before the Commission removes any doubt about whether petitioner's interests are environmental," but neither *Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002), nor *Nat'l Ass'n of Home Builders v. Army Corps of Engineers*, 417 F.3d 1272 (D.C. Cir. 2005), relieves the petitioners of the obligation affirmatively to invoke an interest within the relevant zone of interests; at best, the decisions relieve petitioners of the burden of production associated with demonstrating that interest. In this case, the petitioner has simply not invoked an interest in preventing environmental harm.

from an interest in the environment, and does not seek to vindicate environmental concerns"); *BP Exploration & Oil, Inc. v. EPA*, 66 F.3d 784, 803 (6th Cir. 1995) (holding a petitioner alleging injury to its manufacturing business lacked standing to challenge effluent limitations promulgated under the CWA because economic harm "does not fall within the 'zone of interests' that Congress sought to protect in enacting the CWA").

In keeping with *Lexmark* and the above-cited sources of guidance, we hold Gunpowder does not come within the zone of interests protected by the CWA because it did not allege its members would suffer any environmental harm. In sum, Gunpowder does not make a claim within the zone of interests of any of the three relevant statutes.

### III.    Conclusion

For the reasons set forth above, Gunpowder's petition for review is

*Denied*.

ROGERS, *Circuit Judge*, dissenting in part and concurring in the judgment:  Petitioner Gunpowder Riverkeeper is an environmental protection organization whose members live, work, and engage in recreational activities in the river's watershed.  Their ability to do so is directly threatened by the pipeline project that the Federal Energy Regulatory Commission has approved.  Contrary to the court's conclusion, that is sufficient to demonstrate that its members have interests protected by the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and the Clean Water Act, 33 U.S.C. §§ 1151 *et seq.*  Petitioner's merits contentions, however, are unpersuasive, and I therefore concur in the judgment denying the petition.

## I.

To state a valid claim for relief, a petitioner's interest must be "arguably within the zone of interests to be protected or regulated by the statute" whose violation is alleged.  *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970).  The zone-of-interests test is not jurisdictional, but rather a rule of statutory interpretation under which the court must "presume that a statutory cause of action extends only to [petitioners] whose interests fall within the zone of interests protected by the law invoked."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014) (internal quotation marks omitted).

The zone-of-interests test "is not meant to be especially demanding."  *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).  The Supreme Court has "always conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012).  As a result, "the test forecloses suit only when a [petitioner]'s interests are so marginally related to or inconsistent with the purposes implicit in the statute that it

2

cannot reasonably be assumed that Congress authorized that [petitioner] to sue." *Lexmark*, 134 S. Ct. at 1389 (internal quotation marks omitted). This forgiving version of the test applies in the context of the Administrative Procedure Act ("APA"), *see Bennett v. Spear*, 520 U.S. 154, 163 (1997), as well as to challenges under the Natural Gas Act, 15 U.S.C. §§ 717 *et seq.* The Supreme Court has explained that the "lenient approach is an appropriate means of preserving the flexibility of the APA's omnibus judicial-review provision, which permits suit for violations of numerous statutes of varying character that do not themselves include causes of action for judicial review." *Lexmark*, 134 S. Ct. at 1389. The judicial review provision of the Natural Gas Act, 15 U.S.C. § 717r(b),[1] is also such a statute.

Accordingly, this court has concluded that the relevant zone of interests for environmental statutes like NEPA "encompasses environmental values, read, of course, very broadly." *Realty Income Trust v. Eckerd*, 564 F.2d 447, 452 n.11 (D.C. Cir. 1977). Thus, any petitioner who "arguably" asserts an environmental interest, read "very broadly," satisfies the test. The outer limits of the test are illustrated by this court's

---

[1] 15 U.S.C. § 717r(b) provides:

Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part.

precedent holding that businesses and individuals asserting purely monetary interests do not come within environmental statutes' zones of interests. Thus, the court has explained that businesses "seeking to increase the regulatory burden on others in order to advance their own commercial interests" do not come within the Clean Air Act's zone of interests. *White Stallion Energy Ctr., LLC v. EPA*, 748 F.3d 1222, 1258 (D.C. Cir. 2014), *rev'd on other grounds*, *Michigan v. EPA*, No. 14-46 (U.S. June 29, 2015); 42 U.S.C. § 7412. Similarly, a landlord protecting "monetary interests alone" who "can at best claim only a remote, insubstantial, highly speculative and ephemeral interest in the environment" does not fall within NEPA's zone of interests. *Eckerd*, 564 F.2d at 452 n.11 (internal quotation marks omitted). In *Eckerd*, the court suggested this was true of the plaintiffs in *Zlotnick v. Redevelopment Land Agency*, 2 E.L.R. 20,235 (D.D.C. Mar. 3, 1972), who were owners of "an empty downtown lot" and "d[id] not reside in the affected area," and who brought a NEPA challenge with "nothing but their own financial interest to protect," *see id.* at 20,235–36. Other circuits have likewise concluded that NEPA does not protect an interest that "is purely financial" because the statute "is directed at environmental concerns, not at business interests." *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 939 (9th Cir. 2005); *see Latin Am. for Soc. and Econ. Dev. v. Adm'r of Fed. Highway Admin.*, 756 F.3d 447, 465–66 (6th Cir. 2014); *Clinton Comm. Hosp. Corp. v. S. Md. Med. Ctr.*, 510 F.2d 1037, 1038 (4th Cir. 1975).

Nothing about petitioner Gunpowder Riverkeeper suggests it is seeking to protect interests that are strictly financial. It is a non-profit organization whose "general purpose is the protection [of] the Gunpowder River watershed," Petr.'s Br. 3, where its "members live, work, and recreate," *id.* at 17; Op. 2, 6. The organization is "engaged in natural resource protection and conservation" on behalf of its members, Petr.'s Br. 3, aiming to

"maintain and enhance the water quality and aquatic and natural resources of the watershed," *id.* It participated throughout the Commission proceedings, raising issues related to water quality, forest cover, and wildlife. *See* Pet. For R'hg, Docket No. CP13-8-000, Nov. 10, 2014. Nonetheless, the court concludes petitioner cannot invoke the protection of two environmental statutes, Op. 10–12, because its "interests are so marginally related to or inconsistent with" environmental concerns that Congress could not have intended to allow its cause of action, *Lexmark*, 134 S. Ct. at 1389 (internal quotation marks omitted). The court seizes on petitioner's use of the word "property" and not "environment" in its appellate brief as the reason for concluding petitioner's interests fall on the "purely financial" side of the line and fail the zone-of-interests test. The court has misapplied the test.

The appellate briefs alone make clear that petitioner falls within the zones of interests of NEPA and the Clean Water Act. The organization's sole purpose is to protect the Gunpowder River and surrounding environment. *See* Petr.'s Br. 3. Its members stand to lose the property on which they "live, work, and recreate." *Id.* at 17. Their loss of such opportunities is different from the purely monetary interests of a business seeking to impose regulatory costs on a competitor, *see White Stallion*, 748 F.3d at 1258, or a company trying to steer business its way through the regulation of distant land use, *see Ashley Creek*, 420 F.3d at 939. Petitioner's members are not absentee landowners as in *Zlotnick* (and thus *Eckerd*), but actually live on the property affected by the Commission's challenged action. A decrease in the enjoyment of natural resources comes within NEPA's zone of interests. *See, e.g.*, *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 684–85, 686 n.13 (1973). As a result of eminent domain, some of petitioner's members face the loss of that enjoyment. Under the Supreme Court's "lenient approach," *Lexmark*, 134 S. Ct. at

1389, in which "the benefit of any doubt goes to the plaintiff," *Patchak*, 132 S. Ct. at 2210, that is enough for petitioner to come within the zones of interests of NEPA and the Clean Water Act.

The briefs also reference attached affidavits of petitioner's members. *See* Petr.'s Br. 15, 17; Reply Br. 6. Those affidavits describe a litany of environmental interests that will be adversely affected by the loss of property through eminent domain. *See, e.g.*, Le Gardeur Aff. ¶ 6 ("My livelihood and that of my staff and guides is directly tied to the high quality, cold water resources."); *id.* ¶ 7 (members "work, live and recreate along the Gunpowder River and its tributaries"); *id.* ¶ 15 (members "rely on drinking water" from watershed and thus have "interests in [] protecting their drinking water from impacts of the project"); Tedeschi Aff. ¶ 2 (describing reliance "on well water for drinking etc. [and therefore] water quality is important to us"); *id.* ¶ 5 ("Loss of the well jeopardizes the habitability of the property."); *id.* ¶ 7 ("[T]he well may be contaminated by this process."); Mickel Aff. ¶ 3 (interest in "maintaining a clean, healthy water system for drinking, swimming, and fishing"); *id.* ¶ 7 ("We do feel the aesthetic, emotional and physical loss of our trees."); *id.* ¶ 9 (describing members as "people who live on, work and love the land they own"); Merryman Aff. ¶ 4 ("My brothers and I were raised on this farm where we swam and fished in this creek."); *id.* ¶ 6 (seeking to protect "large trees" and "our well, seeps, springs" and other bodies of water). The court strains credulity in describing these statements merely as "assertions of injury that *could be construed* as environmental." Op. 10 (emphasis added). Unsurprisingly, the court cites no authority to support the possibility that such interests are not environmental, for there can be no doubt that the interests identified by petitioner's members are at least "*arguably* within the zone of interests to be protected or regulated by" both NEPA

and the Clean Water Act. *Data Processing*, 397 U.S. at 153 (emphasis added).

The record before the Commission removes any doubt about whether petitioner has and is now asserting environmental interests. Petitioner conveyed to the Commission that it was "fundamentally concerned with the cumulative environmental impacts of this [pipeline] project on the waterways that provide vital drinking water and recreational opportunities" to its members. Pet. for R'hg, Docket No. CP13-8-000, Nov. 10, 2014, at 9–10. "Equally important" to petitioner's members was "the present condition of the adjacent lands of these waterways." *Id.* at 10. When the administrative record makes a petitioner's standing "self-evident," no more is required. *Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002). The court has suggested that the same is true in the zone-of-interests context. *See Nat'l Assoc. of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d 1272, 1286–87 (D.C. Cir. 2005). Yet the court today has refused even to *consider* the administrative record. While a petitioner must "affirmatively . . . invoke an interest within the relevant zone of interests," Op. 10 n.*, petitioner has amply done so, not only before the Commission, but in its briefs and affidavits submitted to the court.

Although petitioner has referred to its members' "property interests," *see* Petr.'s Br. 15; Reply Br. 4, an interest in "property" does not necessarily refer to commercial or financial interests alone, as the standing affidavits and agency record make plain. The asserted interest pertains to *using* that property — which encompasses trees, water, wildlife, etc. — to "live, work, and recreate." Petr.'s Br. 17; Reply Br. 6 (citing Mickel and Merryman affidavits). The use of the word "property" did not magically transform petitioner's members' stated interests in their natural environment into an interest in money alone. The court's conclusion that their only interest is monetary is too

obtuse for a test that "is not meant to be especially demanding." *Clarke*, 479 U.S. at 399.

No doubt, petitioner presented a zone-of-interests analysis only for the Natural Gas Act, *see* Reply Br. 2–4, but in so doing, petitioner conveyed more than enough to make clear that its interests came within the environmental statutes' zones of interest. The court is "not limited to the particular legal theories advanced by the parties." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993); *see Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). Where the correct analysis is as clear as it is here, there is no reason for the court not "to identify and apply the proper construction of governing law." *United States v. Duvall*, 705 F.3d 479, 485 (D.C. Cir. 2013) (Williams, J., concurring in the judgment) (quoting *U.S. Nat'l Bank of Or.*, 508 U.S. at 446). The reason petitioner focused on its members' property rights likely stems from its view that it only had to present a zone-of-interests analysis under the Natural Gas Act because that statute provided the cause of action, *see* 15 U.S.C. § 717r(b), *supra* note 1. Petitioner did not thereby suggest that it *had no* environmental interests, or that it was not challenging the Commission's action to protect those interests. Such a concession would have contradicted its organizational purpose, everything it argued to the Commission during administrative proceedings, and everything its members have told us in the standing affidavits attached to its briefs.

Because the court has imposed a far more constricted version of the zone-of-interests test than Supreme Court precedent allows and this court has applied, I respectfully dissent from the holding that petitioner does not have a cause of action under the Clean Water Act or NEPA.

**II.**

Petitioner contends that the Commission's decision granting a conditional certificate of public convenience and necessity violated the Clean Water Act and NEPA. Neither challenge is persuasive.

**A.**

Petitioner challenges the Commission's conditional certification of the pipeline project as a violation of the requirement in the Clean Water Act that federal agencies must obtain approval from state regulators before approving projects that might impact water quality.

Under section 401(a)(1) of the Clean Water Act, before a federal agency can issue a "license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters," it must receive "a certification from the State in which the discharge originates or will originate . . . that any such discharge will comply" with the state's water quality standards. 33 U.S.C. § 1341(a)(1). "No license or permit shall be granted until the certification required by this section has been obtained or has been waived." *Id.*

The Commission characterizes the challenged conditional approval as an exercise of its authority under the Natural Gas Act to impose conditions on a certificate of public convenience and necessity, *see* 15 U.S.C. § 717f(e).[2] But the Commission has not suggested that its conditioning authority relieves it of the

---

[2] 15 U.S.C. § 717f(e) provides: "The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require."

need to comply with other federal statutes. To the contrary: The challenged certificate includes a specific condition that before construction could be authorized the pipeline owner must file documentation showing "it has received all applicable authorizations required under federal law (or evidence of waiver thereof)." *Certif. Order* ¶ 8. The question presented by petitioner, then, is not whether the Commission's action was *permitted* by the Natural Gas Act, but rather whether its action was *prohibited* by the Clean Water Act.

The plain text of the Clean Water Act does not appear to prohibit the kind of conditional certificate the Commission issued here. On its face, section 401(a)(1) does not prohibit *all* "license[s] or permit[s]" issued without state certification, only those that allow the licensee or permittee "to conduct any activity . . . which may result in any discharge into the navigable waters." 33 U.S.C. § 1341(a)(1). Petitioner has pointed to no activities authorized by the conditional certificate itself that may result in such discharge prior to the state approval and the Commission's issuance of a Notice to Proceed. In fact, the Commission issued that Notice *after* the State of Maryland issued its Clean Water Act certification approving the pipeline project. The Commission's conditional certificate thus preserved the State's "power to block the project" under § 401(a). *City of Tacoma v. FERC*, 460 F.3d 53, 67 (D.C. Cir. 2006).

This court has upheld conditional permitting in similar circumstances. In *City of Grapevine v. Department of Transportation*, 17 F.3d 1502, 1508–09 (D.C. Cir. 1994), the court considered whether the Federal Aviation Administration ("FAA") could approve the construction of a runway conditioned on the successful completion of the review process required by the National Historic Preservation Act. That Act provided that "prior to the approval of the expenditure of any

Federal funds on" a project that might impact an historic place, the agency had to consult with the Advisory Council on Historic Preservation and with state historic preservation officials. *Id.* at 1509 (quotation marks omitted). The court held that the FAA's conditional approval did not violate the Act because the FAA "did not 'approv[e] the expenditure of any Federal funds' for the runway," *id.* at 1509 (quoting 16 U.S.C. § 470f), which is all that the Act prohibited prior to consultation. Echoing the circumstances here, the court explained that if the regulated party "commits its own resources" to the project before the condition is satisfied, "then it does so at the risk of losing its investment" should the project ultimately not go forward. *Id.* at 1509. Similarly, in *Public Utilities Commission of California v. FERC*, 900 F.2d 269, 282 (D.C. Cir. 1990), the court held that the Commission had not violated NEPA by issuing a certificate conditioned upon the completion of the environmental analysis.

The cases on which petitioner relies are inapposite because they do not involve certificates conditioned on state approval. Petitioner points to *PUD No. 1 of Jefferson County v. Washington Department of Ecology*, 511 U.S. 700 (1994), in which the Supreme Court noted that "§ 401 of the [Clean Water] Act requires States to provide a water quality certification *before* a federal license or permit can be issued for activities that may result in any discharge into intrastate navigable waters." *Id.* at 707 (emphasis added). Exactly so: State certification is necessary before the Commission authorizes "activities that may result in any discharge into intrastate navigable waters." *Id.* The discussion in *PUD No. 1* on which petitioner relies merely summarizes the language of the Act; it does not suggest that the section 401(a)(1) prohibition might also reach activities that do not have any impact on intrastate navigable waters. As the Court stated in *PUD No. 1*, "[s]ection 401(a)(1) identifies the category of activities subject to certification — namely, those with discharges." *Id.* at 711–12.

Similarly, in *City of Tacoma*, 460 F.3d 53, this court addressed a different question: whether the Commission had to determine that the state certification was in fact "the certification required by [section 401(a)(1)]." 33 U.S.C. § 1341(a)(1); *see City of Tacoma*, 460 F.3d at 67–68. In that context, the court summarized section 401's requirement by stating that "without that certification, FERC lacks authority to issue a license." *Id.* at 68. First, the court had no occasion to address what kind of "license" might comply with the Clean Water Act in different circumstances; the Commission's license in that case had not been conditional on state certification because the state had already issued what the Commission believed to be a valid certification. *See id.* at 67. Second, the court's description is consistent with the plain text of section 401(a)(1): the Commission "lacks authority to issue a license" to conduct activities affecting intrastate navigable waters. *Id.* at 67–68. But that does not mean it also lacks authority to issue other kinds of licenses; petitioner offers no reason to conclude the Clean Water Act applies to all manner of regulated activities that do not affect water quality.

**B.**

With regard to NEPA, petitioner challenges the adequacy of the Commission's Environmental Assessment, based on the Commission's reliance on other agencies' environmental analyses in determining that an Environmental Impact Statement was unnecessary. *See* 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1508.9. But where this court has rejected an agency's reliance on other entities' environmental analyses, *see Idaho v. ICC*, 35 F.3d 585 (D.C. Cir. 1994); *Calvert Cliffs' Coordinating Comm. v. Atomic Energy Com'n*, 449 F.2d 1109 (D.C. Cir. 1971), the agency had failed to undertake *any* analysis of its own. That is not the case here.

The Commission prepared a detailed Environmental Assessment with specific and responsive discussions of issues raised at public meetings and in written submissions, applying its own observations and reasoning and explaining mitigating steps that the pipeline owner would be required to take to minimize the identified environmental impacts. The Commission's mention of other agencies' certification processes reflects a heathy appreciation of relevant views, not an abdication of its own responsibilities or a negation of the remainder of its own environmental analysis. Petitioner thus fails to identify the fatal type of abdication that the court disapproved in *Idaho* and *Calvert Cliffs*.

## C.

Whether the Commission's conditional certificate allowed for the immediate exercise of eminent domain is not entirely clear. The Natural Gas Act allows the use of eminent domain pursuant to a certificate that authorizes "the construction or extension of [] facilities," 15 U.S.C. § 717f(c)(1)(A); *see id.* § 717f(e). The initial certificate issued by the Commission here did not authorize any construction. Must the "holder of a certificate of public convenience and necessity" described in the eminent domain provision, *see id.* § 717f(h), be a holder of the type of certificate described in § 717f(c) — that is, one who is authorized to begin construction, extension, or operation of facilities? If permitting eminent domain did not require the approval of construction, then the Commission could authorize the use of eminent domain for projects that are ultimately rejected by the State under the Clean Water Act. Petitioner has not presented a challenge stemming from any violation of the Natural Gas Act, *see* Reply Br. 3, 14 n.7, and so resolution of this question is for another day. *See also* Op. 4 n.*.

Accordingly, although I part from the court's conclusion that petitioner fails to come within the zones of interests of

NEPA and the Clean Water Act, I join the judgment denying the petition.