Opinion for the Court filed by Senior Circuit Judge GINSBURG.
Opinion dissenting in part and concurring in the judgment filed by Circuit Judge ROGERS.
GINSBURG, Senior Circuit Judge:
The Federal Energy Regulatory Commission issued a certificate of public convenience and necessity to Columbia Gas Transmission, LLC, conditionally authorizing the company to extend a natural gas pipeline in Maryland. Gunpowder River-keeper, an association of individuals who “work, live, and recreate along the Gunpowder River and its tributaries,” petitioned for rehearing, which the Commission denied. Gunpowder then petitioned this court for review of the Commission’s order granting the certificate and Columbia intervened in support of the Commission. We deny Gunpowder’s petition for want of a legislatively conferred cause of action.
I. Background
The Natural Gas Act (NGA) requires any party seeking to construct a facility for transporting natural gas first to obtain a certificate of public convenience and necessity from the Federal Energy Regulatory Commission. 15 U.S.C. § 717f(c)(l)(A). With an exception not relevant here, the Commission grants a certificate only if the construction project' “is or will be required by the present or future public convenience and necessity,” and conditions it upon “such reasonable terms and conditions as the public convenience and necessity may require.” 15 U.S.C. § 717f(e).
In issuing a certificate, however, the Commission must comply with the separate statutory mandate of the National Environmental Policy Act (NEPA). See 42 U.S.C. § 4332(2)(C). In accordance with the NEPA, every application for a certificate prompts an environmental review. Generally, the Commission first prepares an environmental assessment and, unless it determines the proposed project would have no significant environmental impact, it goes on to prepare a full-blown environmental impact statement. See 40 C.F.R. § 1501.4.
In addition, the Clean Water Act (CWA) requires every applicant for a federal permit authorizing any action that “may result in any discharge into the navigable waters” of the United States to submit to the permitting agency a certification from the appropriate state or interstate agency “that any such discharge will comply” with the CWA. 33 U.S.C. § 1341(a)(1).
Following the Commission’s issuance of the conditional certificate here at issue, Gunpowder filed a petition for rehearing on the ground that when the certificate was issued Columbia had not received from the State of Maryland the certification required by the CWA and that, absent that certification, “the cumulative impacts of the project cognizable under the [NEPA] are unknown.” The Commission denied Gunpowder’s petition for rehearing.
*271 The conditional certificate issued to Columbia authorized it to begin construction of the extension only after receiving all required permits, and only after obtaining further authorization from the Commission. Under Section 7 of the NGA, however, issuance of the conditional certificate enabled Columbia immediately to exercise the power of eminent domain to obtain “the necessary right-of-way to construct, operate, and maintain a pipe line” and to place any “equipment necessary to the proper operation of such pipe line.” 15 U.S.C. § 717f(h); see also, e.g., Columbia Gas Transmission LLC v. 0.85 Acres, More or Less, in Hafford, Cnty., Md, No. l:14-cv-02288, 2014 WL 4471541 (D.Md. Sept. 8, 2014) (so interpreting the certificate).* The conditional order required Columbia to “ensure that it restores and re-vegetates affected properties, which will minimize property value impacts, and ... compensate landowners for damages like tree loss.”
Gunpowder here argues the Commission’s issuance of the conditional certificate of public convenience and necessity violated both the GWA and the NEPA.
II. Analysis
We address first the court’s jurisdiction over this case pursuant to Article III of the Constitution of the United States. Steel Co. v. Citizens for a Better Env’t, 528 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (noting that jurisdiction must “be established as a threshold matter”). We then turn to the “zone of interests” analysis.
A. Jurisdiction
The Commission has called into question whether Gunpowder has standing under Article III to challenge the conditional certificate. Specifically, the Commission suggests that whether Gunpowder has standing is a “close call” because “[i]ts brief ... does not show that its members have suffered injury from actual or threatened eminent domain actions:” If Gunpowder lacks constitutional standing, then this court lacks jurisdiction to address its petition for review. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
1. Standing
To invoke the jurisdiction of the court, an association acting on behalf of its members must show that “its members would ... have standing to sue in their own right, the interests at stake are germane to the organization’s purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.” Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). A member of an organization would have standing if he, she, or it (1) “has suffered an ‘injury in fact’ that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical”; (2) “the injury is fairly traceable to the challenged action of the defendant”; and (3) “it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.” Id. at 180-81, 120 S.Ct. 693.
Gunpowder points to affidavits of certain of its members to show they have suffered an injury in fact because their property is subject to eminent domain proceedings that have been or may be started by Columbia pursuant to its plan to extend its natural gas pipeline. We have previously held that a landowner made subject *272 to eminent domain by a decision of the Commission has been injured in fact because the landowner will be forced either to sell its property to the pipeline company or to suffer the property to be taken through eminent domain. See B & J Oil & Gas v. FERC, 353 F.3d 71, 74-75 (D.C.Cir.2004). Contrary to the implicit premise of the Commission’s argument, it is not necessary in order to show injury that property already have been taken, or even that eminent domain proceedings have begun; it is enough that they have been deemed authorized and will proceed absent a sale by the owner.** See id. at 75. The Commission’s alternative argument — that our precedent is inapplicable because in this case “it does not appear that the process will extinguish landowners’ property interest” — is similarly bootless, as it addresses only the degree, not the fact, of the landowners’ injury. Finally, because the threat of eminent domain derives from the conditional certificate, the injury would be redressed by a favorable decision of the court, which would require vacatur of the order granting the certificate. In sum, a member of Gunpowder against whom eminent domain proceedings have been instituted or threatened would have constitutional standing to pursue the present case.
As for Gunpowder’s standing as an association to bring this case on behalf of its injured members, we note that Gunpowder’s undisputed purpose is to preserve and protect the Gunpowder River watershed. Gunpowder’s claims under the NEPA and the CWA are clearly germane to that purpose, as both statutes aim to prevent degradation of the natural environment. Finally, because Gunpowder’s petition for review concerns only the question whether the conditional certificate issued by the.Commission is lawful, it is not necessary for any individual member of Gunpowder to participate in this proceeding in order to secure effective relief for all its injured members. See Warth v. Seldin, 422 U.S. 490, 515, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (“If ... the association seeks a declaration, injunction, or some other form of prospective relief, it can be reasonably supposed that the remedy, if granted, will inure to the benefit of those members ... actually injured”). Gunpowder therefore satisfies the requirements for Article III standing.
2. Mootness
Because Maryland has issued the certification required by the CWA, Columbia argues Gunpowder’s petition for review is moot and therefore non-justiciable. See Loughlin v. United States, 393 F.3d 155, 169 (D.C.Cir.2004) (describing the mootness doctrine as a “justiciability doctrine[ ]”). A case is moot if “events have so transpired that the decision [of the court] will neither presently affect the parties’ rights nor have a more-than-speculative chance of affecting them in the future.” Daimler Trucks N. Am. LLC v. EPA 745 F.3d 1212, 1216 (D.C.Cir.2013).
Columbia’s argument fails because it disregards Gunpowder’s challenge under the NEPA, which is unaffected by issuance of the state certification required by the CWA. The disputed validity of Columbia’s conditional certificate, and the power of eminent domain that depends upon it, therefore continue to present a live controversy. Consequently, the court has jurisdiction of the present controversy.
*273 B. Zone of interests
In addition to constitutional standing, a plaintiff must have a valid cause of action for the court to proceed to the merits of its claim. See Natural Res. Def. Council v. ERA, 755 F.3d 1010, 1018 (D.C.Cir.2014) (denying a petition for review because the petitioner lacked a cause of action). Pursuant to the most recent teaching of the Supreme Court, we “presume that a statutory cause of action extends only to plaintiffs whose interests ‘fall within the zone of interests protected by the law invoked.’ ” Lexmark Int'l, Inc. v. Static Control Components, Inc., — U.S. —, 134 S.Ct. 1377, 1388, 188 L.Ed.2d 392 (2014) (quoting Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).
In this case, Gunpowder claims an interest, and hence a cause of action, under each of three distinct statutes: the NGA, the NEPA, and the CWA. The Commission argues that Gunpowder’s asserted interest — avoiding harm to its members’ property rights — falls outside the zones of interest protected or regulated by the NEPA and the CWA, and that its alleged non-compliance with those statutes falls outside the zone of interests protected or regulated by the NGA. We conclude Gunpowder’s interest in protecting its members’ property from eminent domain in the face of alleged non-compliance with the NEPA and the CWA does not fall within the zones of interest protected by any of the three aforementioned statutes.
1. The NGA
The NGA provides that “[a]ny party to a proceeding under this chapter aggrieved by an order issued by the Commission ... may obtain a review of such order.” 15 U.S.C. § 717r(b). A party is “aggrieved” within the meaning of the NGA “if as a result of an order of [the Commission] it has sustained injury in fact to an interest arguably within the zone of interests to be protected or regulated” by the Commission under the NGA. Moreau v. FERC, 982 F.2d 556, 564 (D.C.Cir.1993) (citation and internal quotation marks omitted). A party may also be “aggrieved” within the meaning of the NGA if it “assert[s] an interest that is arguably within the zone of interests intended to be protected by the statute on which it relies” — even if that statute is not the NGA itself — in which case, however, the zone of interests analysis is conducted with respect to the statute upon which the party relies. ANR Pipeline Co. v. FERC, 205 F.3d 403, 408 (D.C.Cir.2000).
Although “the property interests of neighboring landowners arguably fall within the zone of interests the NGA protects,” Moreau, 982 F.2d at 564 n. 3, the zone of interests of the NGA does not encompass injuries arising out of violations of other statutes, such as the CWA or the NEPA. Therefore, when a petitioner for review pursuant to the NGA implicitly invoked a separate statutory cause of action as the foundation of its claim, we proceeded to determine whether that petitioner’s interests came within the zone of interests protected or regulated by that separate statute. See ANR Pipeline Co., 205 F.3d at 407-08. In that case, as here, the petitioner argued the Commission had failed to comply with the NEPA. Id. at 407. We therefore treated the petitioner’s complaint as “a NEPA challenge” and proceeded to evaluate whether the petitioner’s grievance came within the zone of interests protected by the NEPA. Id. at 407-08.
Here, Gunpowder has invoked both the NEPA and the CWA. We proceed accordingly to evaluate whether its interest falls within the zone of interests protected by either of those statutes.
*274 2. The NEPA
The zone of interests protected by the NEPA is, as its name implies, environmental; economic interests simply do not fall within that zone. Id. (so noting with respect to the petitioner’s “economic interest” in suppressing competition). To be sure, a landowner is not disqualified from asserting a claim under the NEPA simply because it has an economic interest in defeating a challenged regulatory action, Realty Income Trust v. Eckerd, 564 F.2d 447, 452 (D.C.Cir.1977) (“[A] party is not precluded from asserting cognizable injury to environmental values because his ‘real’ or ‘obvious’ interest may be viewed as monetary”), but it still must assert an environmental harm in order to come within the relevant zone of interests. Id. at 452 & n. 10. As this court has explained specifically with respect to eminent domain as the source of an injury, “the ‘zone of interest’ under NEPA encompasses environmental values, read, of course, very broadly, but does not encompass monetary interests alone.” Id. at 452 n. 11.
In this case, Gunpowder has alleged only that some of its members “are subject to actual or the threat of eminent domain proceedings now that will result in a loss of property rights.” Although the affidavits of Gunpowder’s members contain some assertions of injury that could be construed as environmental, see, e.g., Affidavit of SallyAnn & Michael Mickel, (stating affiants “feel the aesthetic, emotional, and physical loss of our trees”), the petitioner itself does not offer them in that spirit; indeed, Gunpowder does not invoke them for the purpose of showing environmental harm even in replying to the Commission’s argument that Gunpowder fails the zone of interests test under the CWA and NEPA. Cf. Bd. of Regents of the Univ. of Wash. v. EPA 86 F.3d 1214, 1221 (D.C.Cir.1996) (noting that arguments not clearly raised in a party’s opening brief are generally considered to be forfeit). Because Gunpowder did not argue that its members would suffer any environmental harm — indeed, it expressly disclaimed the need to do so — we conclude the petitioner does not come within the zone of interests protected by the NEPA.***
3. The CWA
Although this circuit has never addressed the question whether an injury arising specifically by reason of eminent domain can sustain a claim under the CWA, that statute by its terms, like the NEPA, is aimed clearly and solely at preventing environmental harms. See 33 U.S.C. § 1251(a) (“The objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of the Nation’s waters”). This court has therefore held that claims not aimed at “protecting] navigable rivers and streams from pollution” or at “requiring] those who desire to discharge pollutants into the waterways to obtain a permit for doing so” fall outside the zone of interests protected by the CWA. Citizens Coordinating Comm. on Friendship Heights, Inc. v. Wash. Metro. Area Transit Auth., 765 F.2d 1169, 1173 (D.C.Cir.1985) (denying standing to a corporate plaintiff that alleged injury based upon the “seepage of *275 diesel fuel into its ground water collection system and elevator pit”). Our sister circuits agree. See Dan Caputo Co. v. Russian River Cnty. Sanitation Dist., 749 F.2d 571, 575 (9th Cir.1984) (denying standing under the CWA because the plaintiff’s claim “does not arise from an interest in the environment, and does not seek to vindicate environmental concerns”); BP Exploration & Oil, Inc. v. EPA, 66 F.3d 784, 803 (6th Cir.1995) (holding a petitioner alleging injury to its manufacturing business lacked standing to challenge effluent limitations promulgated under the CWA because economic harm “does not fall within the ‘zone of interests’ that Congress sought to protect in enacting the CWA”).
In keeping with Lexmark and the above-cited sources of guidance, we hold Gunpowder does not come within the zone of interests protected by the CWA because it did not allege its members would suffer any environmental harm. In sum, Gunpowder does not make a claim within the zone of interests of any of the three relevant statutes.
III. Conclusion
For the reasons set forth above, Gunpowder’s petition for review is

Denied.

 Whether the certificate was correctly construed as authorizing Columbia to exercise the power of eminent domain is not before this court, and we do not decide it.

 Gunpowder has advised the court that, subsequent to its initial briefing, “Columbia won partial summary judgment in its condemnation action against [its] affiants.” For the reason stated above, however, we need not rely upon this extra-record development.

 Judge Rogers asserts that "[t]he record before the Commission removes any doubt about whether petitioner's interests are environmental,” but neither Sierra Club v. EPA, 292 F.3d 895 (D.C.Cir.2002), nor Nat'l Ass’n of Home Builders v. Army Corps of Engineers, 417 F.3d 1272 (D.C.Cir.2005), relieves the petitioners of the obligation affirmatively to invoke an interest within the relevant zone of interests; at best, the decisions relieve petitioners of the burden of production associated with demonstrating that interest. In this case, the petitioner has simply not invoked an interest in preventing environmental harm.